**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Criminal Action No. 19-790 (MAS) |
| v. | **MEMORANDUM OPINION** |
| ERIC G. HAFNER, | |
| Defendant. | |

**SHIPP, District Judge**

This matter comes before the Court upon two motions by Defendant Eric G. Hafner ("Defendant"). The first is Defendant's Motion to Dismiss on Speedy Trial Grounds (ECF No. 35), and the second is Defendant's Motion to Dismiss on Due Process Grounds (ECF No. 46). The United States of America (the "Government") opposed both motions. (ECF Nos. 39, 48.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1.[1] For the reasons set forth herein, Defendant's Motions to Dismiss are denied.

### I. BACKGROUND

On October 6, 2016, Defendant was charged in a criminal complaint in the District of New Jersey with transmitting threatening communications in violation of 18 U.S.C. § 875(c). (Mag. No. 16-5019 (TJB), ECF No. 1.) At the time the criminal complaint was issued, Defendant was not in the United States. On September 28, 2019, Defendant was arrested on the island of Saipan,

---

[1] Local Civil Rule 78.1 is applicable to criminal cases in the District of New Jersey. *See* L. Cr. R. 1.1.

in the District for the Northern Mariana Islands, pursuant to an arrest warrant issued in October 2016. (*See* Oct. 17, 2019 Order 1, ECF No. 5.) On September 30, 2019, Defendant appeared before the Honorable Ramona V. Manglona, U.S.D.J., in the District Court for the Northern Mariana Islands for an initial appearance. (*See id.* at 1–2.) On October 23, 2019, Defendant appeared before the Honorable Tonianne J. Bongiovanni, U.S.M.J., for his initial appearance in this District. (*See generally* ECF Nos. 7, 20.)

On October 31, 2019, a federal grand jury returned a thirty-three count Indictment charging Defendant with eighteen counts of transmitting threatening communications in interstate or foreign commerce; nine counts of transmitting threatening communications in interstate or foreign commerce with intent to extort; and six counts of conveying false information concerning the use of an explosive device. (ECF No. 12.) On November 12, 2019, the Court ordered Defendant to file any and all pretrial motions by December 10, 2019. (ECF No. 14.) On November 15, 2019, Defendant was appointed CJA counsel (ECF No. 15), and on November 20, 2019, the Court set jury selection for January 8, 2020 (ECF No. 16). Trial was scheduled to commence immediately following jury selection. (*Id.* ¶ 16.)

On December 5, 2019, Defendant moved for an extension of time to file pretrial motions. (ECF No. 17.) The following day, the Court ordered Defendant to file pretrial motions by January 24, 2020. (ECF No. 19.) On January 31, 2020, Defendant filed three motions, including an omnibus motion seeking additional time to file pretrial motions. (ECF Nos. 26–28.) On March 3, 2020, the Court heard oral argument on the motions and granted Defendant leave to file additional pretrial motions by March 17, 2020. (ECF Nos. 32, 33.)

On March 17, 2020, Defendant filed the instant Motion to Dismiss on Speedy Trial Grounds. (ECF No. 35.) Defendant subsequently moved for an extension of time to file a motion to suppress (ECF No. 36), and for additional time to expand arguments on his motion to dismiss

(ECF No. 44). On April 29, 2020, the Court granted the two motions for reasons set forth in Defendant's submissions and in light of the COVID-19 pandemic. (ECF No. 45.) The Court also noted that, "in light of the pandemic and defense counsel's representation that '[Defendant] is not amenable to having the argument conducted virtually via video [c]onferenc[]ing or telephone,' (Catanzaro Decl. 20, ECF No. 44-1), the oral argument scheduled for May 18, 2020 is adjourned without date." (*Id.*) On May 22, 2020, Defendant filed the instant Motion to Dismiss on Due Process Grounds. (ECF No. 46.)

Finally, due to the COVID-19 pandemic, several standing orders were entered by Chief Judge Freda L. Wolfson governing court operations and excluding time under the Speedy Trial Act. The time period between March 16, 2020 and January 4, 2021 is "excluded time" in *all* criminal proceedings in the District of New Jersey pursuant to 18 U.S.C. § 3161(h)(7)(A). (Standing Order 2020-03, ECF No. 38; Standing Order 2020-09, ECF No. 43; Standing Order 2020-12, ECF No. 47; Extension of Standing Order 2020-12, ECF No. 49; Second Extension of Standing Order 2020-12, ECF No. 50.)

## II. LEGAL STANDARD

### A. Sixth Amendment Speedy Trial

The Sixth Amendment guarantees that "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald*, 456 U.S. 1, 8 (1982).

To determine if a defendant's right to speedy trial has been violated, courts employ a "balancing test, in which the conduct of both the prosecution and the defendant are weighed."

3

*Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Relevant factors include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right [to a speedy trial], and [the presence or absence of] prejudice to the defendant." *Barker*, 407 U.S. at 530–33.

### B. Fifth Amendment Due Process

"[T]he Due Process Clause has a limited role to play in protecting against oppressive [pre-indictment] delay." *United States v. Robles*, 129 F. App'x 736, 738 (3d Cir. 2005) (citing *United States v. Lovasco*, 431 U.S. 783, 789 (1977)). "To successfully invoke the due process clause [for pre-indictment delay], a defendant must prove actual prejudice and intentional delay by the government to gain a tactical advantage." *United States v. Otto*, 742 F.2d 104, 107 (3d Cir. 1984) (citing *United States v. Marion*, 404 U.S. 307, 325–26 (1971)). "Proof of prejudice, however, does not automatically establish the validity of a due process claim; it only makes one 'concrete and ripe for adjudication.'" *Id.* (quoting *Lovasco*, 431 U.S. at 789). "Once ripe, 'the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.'" *Id.* at 107–08 (quoting *Lovasco*, 431 U.S. at 790). Finally, "[t]o succeed on a motion to dismiss for pre[-]indictment delay, a defendant must meet a heavy burden[.]" *United States v. Baxt*, 74 F. Supp. 2d 425, 429 (D.N.J. 1999).

### III. DISCUSSION

#### A. Motion to Dismiss on Speedy Trial Grounds

Defendant argues that the Government's failure to bring him to trial following the issuance of the criminal complaint violated his Sixth Amendment right to a speedy trial. (*See generally* Def.'s Speedy Trial Moving Br., ECF No. 35-2.) Defendant, accordingly, seeks dismissal of the Indictment or a hearing on the Government's efforts to bring him to trial. (*Id.* at 15.)

### 1. Length of Delay

The first *Barker* factor—the length of delay—is a threshold inquiry. *Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."). Defendant asserts that his Sixth Amendment right to a speedy trial—and, therefore, the beginning of the Government's delay—attached on October 6, 2016, when the criminal complaint was issued. (Def.'s Speedy Trial Moving Br. 4–5.) The Court disagrees. "[T]he delay is measured from the date of formal accusation, [that is], from the earliest date of arrest or indictment until the commencement of trial." *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993) (citing *MacDonald*, 456 U.S. at 6–7); *see also United States v. Bailey-Snyder*, 923 F.3d 289, 293 (3d Cir. 2019) (noting that the Sixth Amendment guarantee "attaches at a defendant's arrest or indictment, whichever comes first"). The Court, therefore, finds that Defendant's Sixth Amendment right attached on September 28, 2019, the date of his arrest. Accordingly, the Court must determine whether the delay—here, approximately thirteen and one-half months—is presumptively prejudicial.

"Generally, delays of one year or longer are considered 'presumptively prejudicial' and prompt the full *Barker* analysis." *United States v. Mack*, No. 14-00050, 2014 WL 806456, at *2 n.2 (D.N.J. Feb. 28, 2014) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)); *see also, e.g., Hakeem*, 990 F.2d at 760 ("[A] fourteen and one-half month detention before trial merits further inquiry."). The Court, therefore, proceeds to remaining *Barker* factors.

### 2. Reason for the Delay

"The flag all litigants seek to capture is the second factor, the reason for delay." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 531. "A more neutral reason[, however,] such as negligence or overcrowded courts should be weighted

5

less heavily[,]" but should still be considered. *Id.* "Conversely, . . . delays attributable to the dilatory actions of the defendant cut against a finding of a Sixth Amendment violation." *Hakeem*, 990 F.2d at 766 (citation omitted).

In the instant matter, it is evident that much—if not all—of the delay is attributable to the actions of Defendant. Since Defendant's arrest on September 28, 2019, Defendant has filed—in addition to the two instant motions—the following motions before the Court: (1) Motion for an Extension of Time to File Pretrial Motions (ECF No. 17); (2) Motion to Dismiss for failure to comply with Federal Rule of Criminal Procedure 5.1 (ECF No. 26); (3) Motion to Dismiss and Disqualify the Government's counsel, Ian D. Brater (ECF No. 27); (4) Motion for an Extension of Time to File a Suppression Motion (ECF No. 36); and (5) Motion for an Extension of Time to File a Supplemental Argument (ECF No. 44). Defendant also filed an omnibus motion seeking, *inter alia*, permission "to file additional motions up to the time of trial." (*See* ECF No. 28.)

"Having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, . . . [D]efendant[ is] not now able to criticize the very process which [he] so frequently called upon." *Loud Hawk*, 474 U.S. at 316–17 (citation omitted); *see also United States v. Baer*, No. 15-00417, 2019 WL 1379879, at *19 (D.N.J. Mar. 27, 2019) ("The record is clear that much of the delay was due to [the d]efendant's insistence on filing motions or taking actions which significantly delayed proceedings."). The pretrial delays in the instant matter are mostly attributable to Defendant's numerous motions, not the Government.[2] The Court, accordingly, finds that the second *Barker* factor weighs against Defendant.

---

[2] In addition to the delay caused by Defendant's pretrial motions, the ongoing COVID-19 pandemic has caused district courts nationwide to put jury trials on hold. (*See generally* Second Extension of Standing Order 2020-12.) While the Court recognizes the hardships and frustrations COVID-19 has placed upon individuals throughout the world—including criminal defendants— the delays associated with the pandemic underscore the Court's finding above that the delays in the instant matter are not attributable to the Government.

6

### 3. Defendant's Assertion of the Right to a Speedy Trial

The third *Barker* factor—the extent to which Defendant has asserted his Sixth Amendment right—"must be viewed in the light of [Defendant's] other conduct." *Loud Hawk*, 474 U.S. at 314; *see also Hakeem*, 990 F.2d at 764 ("Repeated assertions of the right do not, however, balance [the third] factor in favor of a [defendant] when other actions indicate that he is unwilling or unready to go to trial."). "Accordingly, . . . courts have emphasized the need for a [defendant] to show he 'vigorously pursued a speedy trial' if the factor of its assertion is to be weighed in the [defendant's] favor." *Hakeem*, 990 F.2d at 764 (quoting *United States v. Koller*, 956 F.2d 1408, 1414 (3d Cir. 1992)); *see also Baer*, 2019 WL 1379879, at *20 (finding that the third *Barker* factor did not weigh in favor of the defendant because "it was [the d]efendant's own actions that prevented trial from commencing as quickly as possible").

Here, although Defendant explicitly moved for dismissal on speedy trial grounds, "that finding alone does not establish that [Defendant has] appropriately asserted [his] rights." *Loud Hawk*, 474 U.S. at 314; *see also Hakeem*, 990 F.2d at 765 ("Where, through contrary actions, a defendant evidences an unwillingness to commence with the trial requested, the request carries minimal weight."). From Defendant's arrest in September 2019 through the filing of the instant Motion to Dismiss on Speedy Trial Grounds on March 17, 2020, Defendant filed four separate motions, two of which sought extensions of time to file pretrial motions. (*See* ECF Nos. 17, 26–28.) Furthermore, after filing the instant Motion to Dismiss on Speedy Trial Grounds, Defendant sought an extension to reply to the Government's opposition, an extension to file a supplemental argument, and an adjournment of oral argument. (*See* ECF Nos. 41, 44.) Although Defendant was well within his rights to file these motions and request the extensions, they evince his unwillingness to commence the trial. *See, e.g., Baer*, 2019 WL 1379879, at *19; *see also Loud Hawk*, 474 U.S. at 314 ("At the same time respondents were making a [claim] . . . for speedy trial,

7

they consumed six months by filing indisputably frivolous petitions for rehearing and for certiorari[.]"). Even assuming arguendo that Defendant asserted his speedy trial rights through the instant motion, the Court cannot find that the third *Barker* factor weighs *heavily* in Defendant's favor. *See Hakeem*, 990 F.2d at 765–66 ("[W]e think the weight to be given [to the defendant's speedy trial] petition . . . is reduced by his apparent unreadiness to proceed to trial at any of the times he asserted the right."); *Baer*, 2019 WL 1379879, at *19 ("The numerous motions were accompanied by voluminous amounts of briefing and requests for hearings. The periods of time required to brief these motions and for the Court to consider them . . . weigh against the [d]efendant.").

### 4. Prejudice Resulting from the Delay

"The fourth and most critical *Barker* factor[ is] the prejudice to the defendant from the delay[.]" *Wells v. Petsock*, 941 F.2d 253, 258 (3d Cir. 1991); *see also Hakeem*, 990 F.2d at 760. "Prejudice . . . should be assessed in the light of the interests of defendants[,] which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. In *Barker*, the Supreme Court "identified three types of prejudice resulting from a prolonged trial date: oppressive pretrial incarceration, anxiety and concern of the accused, and possible impairment of the defense." *Petsock*, 941 F.2d at 258 (citing *Barker*, 407 U.S. at 532 (noting that the possible impairment of the defense is the most serious of the three)). "With respect to all its various types, the burden of showing prejudice lies with the individual claiming the violation[,] and '[the] possibility of prejudice is not sufficient to support [the] position that . . . speedy trial rights [are being] violated.'" *Hakeem*, 990 F.2d at 760 (quoting *Loud Hawk*, 474 U.S. at 315).

Defendant does not allege oppressive pretrial incarceration or anxiety and concern. (*See generally* Def.'s Speedy Trial Moving Br. 13–14.) Nor does he "point to any evidence that he believes has been lost or altered[,] and has not named any witnesses who are no longer available."

8

*Baer*, 2019 WL 1379879, at *21. Instead, Defendant asserts that the Government's failure to locate him during the approximately three years between the October 2016 criminal complaint and his September 2019 arrest "seriously hampers and prejudices the defense." (Def.'s Speedy Trial Moving Br. 13–14.) Defendant asks the Court, "[h]ow does one establish their mental state and potential mental health defenses, if that becomes applicable three years later[?]" (*Id.* at 14.) As discussed above, however, speedy trial rights do not attach until a criminal defendant's arrest or indictment. *Hakeem*, 990 F.2d at 760. Notwithstanding Defendant's misunderstanding of the Sixth Amendment legal standard, "[g]eneral allegations that . . . memories have faded are insufficient to create prejudice, at least absent extreme delay such as eight and one-half years" in between an indictment and arrest. *Id.* at 763; *see also Doggett*, 505 U.S. at 657–58. The Court, therefore, finds that Defendant's general, conclusory allegations fail to meet the burden necessary to establish prejudice for the instant thirteen and one-half month delay.

In addition to the three potential types of prejudice outlined in *Barker*, the Supreme Court has held that "excessive delay[s] presumptively compromise[] the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655. "While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay." *Id.* at 655–56 (internal citation omitted). The Court, however, does not find that the instant thirteen and one-half month delay is presumptively prejudicial under the fourth *Barker* factor. *Compare, e.g., Hakeem*, 990 F.2d 764 (fourteen and one-half month delay between arrest and trial not presumptively prejudicial), *with Doggett*, 505 U.S. at 657–58 (eight and one-half year delay between arrest and indictment presumptively prejudicial). The "magnitude [of the instant delay] is too small to itself increase the factor of prejudice to a quantity that will perceptively weigh the balance we must make in [Defendant's] favor." *Hakeem*, 990 F.2d at 764. Because

9

Defendant has failed to demonstrate prejudice under the fourth *Barker* factor, and because the instant delay is not presumptively prejudicial, the Court finds that the fourth *Barker* factor weighs against Defendant.

### 5.     Balancing the *Barker* Factors

After carefully considering the parties submissions and reviewing the record, the Court finds that Defendant has not suffered a violation of his Sixth Amendment right to a speedy trial. Although the first *Barker* factor—the length of the delay—weighs in Defendant's favor, the second and fourth factors weigh against him and the third factor weighs only slightly in his favor. On balance, the Court finds that Defendant's numerous pretrial motions and the ongoing COVID-19 pandemic are the predominant causes for delay in the instant matter, not the Government. Accordingly, Defendant's Motion to Dismiss on Speedy Trial Grounds is denied.

### B.     Motion to Dismiss on Due Process Grounds

Defendant also argues that "[i]t would be patently and fundamentally unfair and violative of due process to allow this prosecution to proceed" because of the delay from the filing of the criminal complaint on October 6, 2016 to the return of the Indictment on October 31, 2019. (Def.'s Due Process Moving Br. 9–10, ECF No. 46-1.) Defendant asserts that the Government's delay impaired his ability to prepare his defense and "establish specific places he was or people he may have been with when the alleged events took place." (*Id.* at 9.)

It is not enough to rely on "the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses [will] become inaccessible, and evidence [will] be lost." *Marion*, 404 U.S. at 326. This possibility is "not in [itself] enough to demonstrate that [Defendant] cannot receive a fair trial and to[,] therefore[,] justify the dismissal of the [I]ndictment." *Id.* Here, Defendant acknowledges that "he cannot identify a witness that has died or specific exculpatory evidence that has been lost." (Def.'s Due Process Moving Br. 9.) Defendant instead argues that

10

the Government's delay has left him with the "impossible task" of "recreat[ing] specific days three . . . plus years later" to produce exculpatory evidence and prepare a defense. (*Id.*) Defendant also appears to assert that his alleged mental health issues may prevent him from offering exculpatory evidence. (*Id.* at 9–10.) "The standard[, however,] to be applied when assessing prejudice suffered by a defendant because of . . . loss of memory or incapacity is the same as that applied when assessing the prejudice suffered by the loss of any other specific evidence[.]" *Baxt*, 74 F. Supp. 2d at 435. "The defendant must demonstrate, *with specificity*, that his mental loss or incapacity will prevent him from offering exculpatory evidence that is not merely cumulative of evidence available from other sources." *Id.* (emphasis added). Here, Defendant's assertions of memory loss are far too general and conclusory to satisfy the standard required to demonstrate prejudice under the Fifth Amendment. *See id.* ("[Defendant] relies on generalized claims of prejudice insufficient to substantiate a claim that his Due Process rights have been violated."). Accordingly, Defendant's Motion to Dismiss on Due Process Grounds is denied.[3]

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motions to Dismiss are denied. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[3] Because a defendant seeking to invoke his Due Process rights "must prove actual prejudice *and* intentional delay by the government to gain a tactical advantage[,]"*Otto*, 742 F.2d at 107 (emphasis added), the Court need not address Defendant's claims of the Government's intentional delay. The Court, however, briefly notes that it doubts Defendant's assertions under this prong are specific enough to satisfy the heavy burden necessary to demonstrate intentional delay. (*See* Def.'s Due Process Moving Br. 9 (asserting in a conclusory fashion that the delay "was not negligence but to gain a tactical advantage over" Defendant).)