UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERIC G. HAFNER | Criminal No. 19-790 (MAS)<br><br>**MEMORANDUM ORDER** |

This matter comes before the Court on Criminal Justice Act ("CJA") counsel Timothy R. Anderson's ("Mr. Anderson") Motion to be Relieved as Counsel. (ECF No. 158.) The Court denies Mr. Anderson's request.

The Court begins by way of brief background with Defendant Eric G. Hafner's ("Defendant") dilatory and obstructionist behavior and the Court's many efforts to accommodate it. The history of this case is storied, yet the Court provides only portions of the story for purposes of the instant motion. Start with Defendant's first attorney. On October 23, 2019, the Court appointed assistant Federal Public Defender Andrea Bergman ("Ms. Bergman") to represent Defendant. (ECF No. 6.) Not even a month later, during Defendant's arraignment, Defendant asked for alternate counsel, "preferably not from the Federal Office of the Public Defender"; apparently, Defendant and Ms. Bergman "had some very serious issues" in terms of how to proceed with the defense in the case, some of which were attributable to the Federal Office of the Public Defender's policies. (Tr. 31:5-21, ECF No. 23.) While Ms. Bergman expressed that the two might be able to "resolve some of the differences," she also expressed concern that they would "arrive at this juncture [of attorney-client conflict] sooner or later in all likelihood." (*Id.* at 32:2-10.) The Court granted Defendant's request that same day, November 12, 2019, relieving Ms.

Bergman and, subsequently, appointing CJA counsel Mark W. Catanzaro ("Mr. Catanzaro") in her stead. (ECF Nos. 13, 15.) So began the cycle of attorney withdrawal requests the Court finds itself in today.

On June 24, 2022, Mr. Catanzaro advised that he was "in a conflict position" with Defendant that required the appointment of new counsel. (ECF No. 116.) This correspondence was accompanied by several letters from Defendant also requesting new counsel—not all of which were docketed due to attorney-client privilege issues. (*See, e.g.*, ECF No. 120 (Defendant wishing to "place on the record" that Mr. Catanzaro provided ineffective counsel in proceedings related to Defendant's guilty plea and Defendant's subsequent request for its withdrawal).) On July 28, 2022, the Court held a telephone status conference on whether to grant the request to relieve Mr. Catanzaro. (ECF No. 138.) Ultimately, the Court obliged once more, appointing Mr. Anderson in Mr. Catanzaro's stead on August 16, 2022. (ECF No. 129.)

But Defendant was not to be satisfied. On August 22, 2022—not even a week after Mr. Anderson's appointment—Defendant submitted correspondence asking the Court to replace Mr. Anderson. This time, Defendant proclaimed his newly appointed counsel to be "generally a horrible person" who "lack[ed] sufficient federal criminal law experience," and Defendant requested "a new lawyer from another area" outside Monmouth County. That same day, Mr. Anderson filed his own request to be relieved as counsel. (ECF No. 133.)

On August 25, 2022, the Court issued a Memorandum Order denying both requests and setting forth a briefing schedule for Defendant's then-pending request to withdraw his guilty plea. (Aug. 25 Order, ECF No. 134; *see also* Mot. to Withdraw Guilty Plea, ECF No. 139.) The Court found that it had "no reason to believe that Mr. Anderson—a federal criminal defense lawyer with his own practice and a member of the CJA Panel of New Jersey—lack[ed] sufficient experience

2

to effectively advocate for Defendant." (*Id.* at 2.) On November 24, 2022, the Court issued a Memorandum Opinion which laid out more of the history of this case and denied Defendant's request to withdraw his guilty plea. (*See generally* Nov. 24 Mem. Op., ECF No. 149.)

With only sentencing remaining, the draft presentence investigation report was filed on February 27, 2023. (ECF No. 155.) One day later, Mr. Anderson requested a status conference to address a renewed request by Defendant for substitute counsel. (ECF No. 156.) Mindful of the upcoming sentencing and the many delays that had already occurred in this case—and, perhaps most pertinently, Defendant's own repeated correspondences protesting his confinement during such (often, self-inflicted) delays—the Court denied Mr. Anderson's request for a conference and set forth a briefing schedule for sentencing. (ECF No. 157.)

Mr. Anderson subsequently filed the instant Motion to be Relieved as Counsel. (ECF No. 158.) The next day, on March 2, 2023, the Court held a lengthy telephone status conference with both parties regarding this motion, first hearing from the Government on any potential concerns, and hearing none that would affect the Court's decision on this motion, moving on to an *ex parte* discussion with Mr. Anderson to hear his own concerns directly. (*See* ECF No. 159.)

After careful consideration of Mr. Anderson's concerns, the Court denies Mr. Anderson's request. As the Court indicated to Mr. Anderson in the conference, the Court struggled to find alternate CJA counsel for Defendant in the first instance, when relieving Mr. Catanzaro as counsel. Indeed, the Court contacted a substantial number of CJA attorneys, none of whom expressed the willingness or capacity to take on this case. Notably, as the procedural history above makes clear, this is now the Court's *fourth* time specifically examining whether different counsel should be appointed to represent Defendant. Defendant has sought to replace Ms. Bergman, then Mr. Catanzaro, and now, Mr. Anderson. And these attorneys have all similarly indicated, at one time

or another, that they have conflicts with Defendant that would make a working relationship very difficult to maintain. Perhaps unsurprisingly, then, the Court is not convinced that if it were to appoint different counsel now, this would be the Court's last time examining the adequacy of the attorney-client relationship at play, either in the form of another request from Defendant, another request from new counsel, or, more likely, from both. Simply put, the cycle of replacements must end at some point. That point is now.[1]

Separate and apart from the Court's own prior efforts, the Court is not convinced that good cause exists to remove Mr. Anderson at this time. (*See* Aug. 25 Order (laying out the standard for appointment of new counsel when denying the initial requests to replace Mr. Anderson).); *see also McAdams v. United States*, No. 09-737-001, 2016 WL 240877, at *7 (D.N.J. Jan. 20, 2016). Mr. Anderson seems to have had a largely functional relationship with Defendant after the initial hurdles, as evidenced by, for example, Mr. Anderson's assistance in filing Defendant's request to withdraw his guilty plea. The Court only appointed Mr. Anderson to take on the *exact* limited role of representing Defendant in the final stages of his case following the entry of Defendant's guilty plea—with sentencing being the obvious remaining stage, as the Court specifically advised Mr. Anderson when presenting him with the opportunity to take on this case.

The Court now takes the time to address Defendant directly. The Court reminds Defendant that he is not entitled to choose his own appointed counsel. *See United States v. Senke*, 986 F.3d

---

[1] The Court notes that it already denied Defendant the ability to proceed *pro se* during trial after holding a *Faretta* hearing on the matter, putting a stopper on any arguments regarding Defendant's ability or desire to proceed *pro se* during other critical stages of the proceedings thereafter. (*See generally Faretta* Hr'g Tr., ECF No. 137.); *see also United States v. Low*, 401 F. App'x 664, 667 (3d Cir. 2010) ("Neither logic nor precedent supports carving out an exception [to have a *Faretta* colloquy] when the waiver [of right to counsel] occurs at sentencing." (quoting *United States v. Salemo*, 61 F.3d 214, 219 (3d Cir. 1995)).

300, 314 (3d Cir. 2021) (recognizing that while a defendant has the right to counsel, "the right to choose one's own counsel does not extend to defendants who require appointed counsel"); *United States v. Lacerda*, 929 F. Supp. 2d 349, 354 (D.N.J. 2013) (explaining that "[t]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers") (internal citation and quotation omitted). Further, the Court reminds Defendant that the Court has already resolved every aspect of litigation in this case up to this point of sentencing—sentencing is all that remains. Finally, the Court cautions Defendant that the Court will not look kindly on any future dilatory efforts to prevent the occurrence of this final stage of proceedings at the district court level. Defendant may take any issues he has with counsel, the Court, or any other parties up on appeal, if he so chooses.

For these reasons, and other good cause shown:

**IT IS**, on this 6th day of March 2023, **ORDERED** as follows:

1. Mr. Anderson's Request to be Relieved as Counsel (ECF No. 158) is **DENIED**.
2. The following shall be the schedule for sentencing in this matter:
   a. The sentencing is set for **May 3, 2023, at 1:00 P.M**.
   b. The parties' responses to the draft pre-sentence report shall be submitted by **March 15, 2023**.
   c. The final pre-sentence report shall be submitted by **March 29, 2023.**
   d. The Government's sentencing memorandum shall be submitted by **April 13, 2023.**
   e. Defendant's sentencing memorandum shall be submitted by **April 23, 2023.**

f. The Government's response, if any, to Defendant's sentencing memorandum shall be submitted by **April 28, 2023.**

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE