<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| | Criminal Action No. 19-790 (ZNQ) |
| v. | **OPINION** |
| **ERIC G. HAFNER**, | |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon several motions filed by *pro se* Defendant Eric G. Hafner ("Defendant"): (1) a motion for reconsideration filed on September 29, 2025 (ECF No. 264), along with a supplemental submission filed on November 20, 2025 (ECF No. 273); (2) a motion to disqualify filed on November 14, 2025 (ECF No. 270)[1]; and (3) a motion to enjoin Alina Habba filed on November 14, 2025 (ECF No. 271). For the reasons set forth below, the Court will **DENY** Defendant's Motions.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

The Court begins with a brief procedural history leading up to the pending motions. On October 31, 2019, Defendant was indicted on thirty-three counts of violating 18 U.S.C. § 844(e) (conveying false information concerning the use of an explosive device), 18 U.S.C. § 875(b) (transmission of interstate communications with the intent to extort), and 18 U.S.C. § 875(c) (transmission of threats in interstate or foreign commerce). (ECF No. 12.) The Honorable Michael A. Shipp was assigned as the presiding judge. Defendant was initially appointed a Federal Public

---

[1] Defendant filed an identical motion to disqualify on December 5, 2025. (ECF No. 275.)

Defender, Andrea Bergman.  (ECF No. 6.)   He then completed a financial affidavit (ECF No 8), and Mark Catanzaro was subsequently appointed as CJA Counsel.  (ECF No. 15).  At Defendant's first trial, he was escorted out of the courtroom by U.S. Marshals for screaming and yelling about a government conspiracy, leading Judge Shipp to declare a mistrial.  (ECF No. 149 at 2.)  At this trial Defendant also requested to proceed *pro se*, which Judge Shipp later denied.  (ECF Nos. 113, 137.)  On the first day of Defendant's second trial, Defendant pled guilty to three counts in the indictment (counts four, seventeen, and twenty-eight).  (ECF Nos. 113, 115, 126.)  After pleading guilty, Defendant met with Mr. Catanzaro and indicated that he wanted to withdraw his guilty plea.  (ECF No. 116.)  Based on that conversation, which was not disclosed, Mr. Catanzaro determined that a conflict existed that necessitated the appointment of new counsel.  (*Id.*)  In subsequent letters to the Court, Defendant wrote that Mr. Catanzaro provided ineffective assistance of counsel that prejudiced Defendant's rights (ECF No. 120), and that Mr. Catanzaro refused to file certain motions on Defendant's behalf (ECF No. 127).

On August 16, 2022, Timothy Anderson was appointed as Defendant's new CJA counsel.  (ECF No. 129.)  Less than a week later, Mr. Anderson requested to withdraw as counsel for Defendant (ECF No. 133), which Judge Shipp denied (ECF No. 134).  On September 6, 2022, Defendant wrote a letter to Judge Shipp requesting a new attorney, stating that he and Mr. Anderson could not work together because of personal differences.  (ECF No. 135.)  In February 2023, Mr. Anderson requested a status conference to address Mr. Hafner's request (ECF No. 156) and subsequently filed a motion to withdraw (ECF No. 158).  Judge Shipp denied that request and set a date for sentencing.  (ECF No. 160.)

Despite the denial, Defendant filed another letter requesting new counsel, claiming that Mr. Anderson was refusing to file certain motions, and that the attorney-client relationship was

"broken beyond repair." (ECF No. 161.) Judge Shipp again denied this request (ECF No. 162), and Mr. Anderson filed an ex parte letter under seal which detailed potentially privileged conversations between Defendant and Mr. Anderson (ECF No. 163). At a subsequent telephone status conference Judge Shipp and Mr. Anderson discussed the contents of the letter, which not only described threatening and abusive conduct directed at Mr. Anderson, but also threats that were made against Mr. Anderson's wife and against Judge Shipp. (ECF No. 168.) After reviewing the letter and holding the status conference, Judge Shipp found good cause to relieve Mr. Anderson as counsel due to Defendant's conduct, appointed Stacy Biancamano as new counsel, and then recused himself due to the threats that were directed at him. (ECF No. 165.) Ultimately, Defendant's case was transferred to the undersigned on March 14, 2023. (ECF No. 167.)

Defendant again requested to proceed *pro se* on March 27, 2023 (ECF No. 174), and shortly thereafter Ms. Biancamano requested to be relieved as counsel because of a conflict of interest (ECF No. 176). This Court then appointed Brandon D. Minde as CJA Counsel for Defendant, who was now Defendant's fifth appointed lawyer. (ECF No. 178.) On December 7, 2023, the Court sentenced Defendant to 240 months of imprisonment. (ECF No. 228.) Defendant subsequently appealed the sentence and his conviction. (ECF No. 230.) While on appeal, Defendant filed a motion in the Third Circuit arguing that his appellate lawyer (also Mr. Minde) had a conflict of interest. (ECF No. 235.) The Third Circuit remanded the case for this Court to conduct a hearing and fact-finding as to whether a conflict of interest existed. (*Id.*) This Court subsequently scheduled a hearing to address the attorney conflict and appointed Joel Silberman as CJA counsel to represent Defendant for the purposes of the attorney-conflict hearing. (ECF No. 237.) Mr. Silberman, however, had to withdraw as counsel because of a personal relationship he had with

one of the victims in this case. (ECF No. 240.) The Court subsequently appointed Rocco Cipparone to represent Defendant. (ECF No. 241.)

On September 2, 2025, Mr. Cipparone filed a motion to withdraw as Defendant's counsel. (ECF No. 257.) In his motion, Mr. Cipparone stated that there had been a breakdown in communication between him and Defendant. (*Id.*) Specifically, Defendant started to use profanity and threaten Mr. Cipparone and his support staff. (*Id.*) In one example, Defendant left a voicemail laced with profanity and threatened to make Mr. Cipparone's "life a living hell." (*Id.*) On September 3, 2025, the Court delivered an oral opinion on the record and issued an order that granted Mr. Cipparone's motion to withdraw. (ECF No. 260.) In the oral opinion, the Court outlined Defendant's history of "abusive and combative" behavior towards the numerous attorneys that he had been appointed. (ECF No. 266 at 9.) As a result of the numerous threats Defendant had made (including 82 voicemails to one attorney), the Court held that Defendant forfeited his right to counsel and must proceed *pro se*. (*Id.*) Because of Defendant's forfeiture, the Court cancelled as moot the conflict-of-interest hearing for Mr. Minde and relieved him as counsel. (*Id.*) Defendant subsequently appealed the Court's ruling and filed a motion for reconsideration. (ECF Nos. 262, 264.) The Third Circuit dismissed the appeal as premature because of the pending motion for reconsideration. (ECF No. 269.)

## II.  SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this case pursuant to 18 U.S.C. § 3231.

## III.  DISCUSSION

### A.  MOTION TO DISQUALIFY

Defendant moves to disqualify the undersigned as the district court judge overseeing his case under 28 U.S.C. § 144 and 28 U.S.C. § 455(a). Section 144 provides as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The statute further provides, in pertinent part, that "[t]he affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time . . . ." 28 U.S.C. § 144.

As an initial matter, the Court notes that "[i]t is the duty of the judge against whom a section 144 affidavit is filed to pass upon the legal sufficiency of the facts alleged." *United States v. Townsend*, 478 F.2d 1072, 1073 (3d Cir. 1973). The mere filing of an affidavit, however, does not automatically disqualify a judge. *See id.* "Disqualification results only from the filing of a timely and sufficient affidavit." *Id.* In judging the sufficiency of an affidavit, "a court may not pass on the truth of the facts alleged," but rather "must determine that the facts establish 'fair support' for the charge of bias." *Smith v. Danyo*, 585 F.2d 83, 87 (3d Cir. 1978). However, to warrant disqualification "the affidavit must contain more than mere conclusions on the part of the pleader. Facts must be pleaded which show that there exists personal bias and prejudice on the part of the trial judge." *Simmons v. United States*, 302 F.2d 71, 75 (3d Cir. 1962); *see also Jones v. Pittsburg Nat. Corp.*, 899 F.2d 1350, 1356 ("Conclusory allegations need not be accepted as true."). Allegations of bias that concern judicial actions are insufficient for recusal. *See Smith*, 585 F.2d at 87; *see also Jones*, 899 F.2d at 1356 (holding that disagreements with legal conclusions reached by a district judge are insufficient for recusal).

Here, Defendant has not put forth facts that could support a charge of bias under 28 U.S.C. § 144. First, the Defendant's affidavit claims that I hold a religious bias towards Defendant.

5

Specifically, Defendant argues that my faith as a Muslim automatically makes me hostile towards non-Muslims. (ECF No. 270 ¶¶ 28–31.) However, there are no allegations included in the affidavit, nor could there be, that show I discussed religion in this case or that I even knew what religion Defendant adheres to, if any. Defendant's assertions are completely speculative and based on nothing more than the fact that I am Muslim. Such conclusory and speculative allegations are insufficient to establish a personal bias on my part.

Defendant relies on a Supreme Court case from over 100 years ago, *Ross v. McIntyre*, to support his claim that I exhibit an "intense hostility" towards non-Muslims. (*Id.* ¶ 28.) But Defendant misreads *Ross* and cherry-picks quotes from that decision. (*Id.* ¶ 29) (citing 140 U.S. 453 (1891).) In *Ross*, the Supreme Court described the history of European governments sending officers to foreign countries dating back to the "Middle Ages." *See* 140 U.S. at 462–63. Part of that historical discussion included a reference to the history of Islamist governments' treatment toward non-Muslims. *See id.* at 463. This discussion, however, was dicta and not the holding of the Supreme Court. Nor does it logically follow that I hold a religious bias against Defendant because of a historical event that occurred centuries ago and of which I am unfamiliar with. Simply put, nothing in *Ross* supports an inference that I hold a religious bias towards Defendant because we share different religious views, much less creates a right for Defendant to have his case heard before a non-Muslim judge. *See id.*; *see also United States v. Cornell*, Cr. No. 15-12, 2025 WL 2980443, at *2 (S.D. Ohio Oct. 22, 2025) (holding that recusal any time a defendant held different religious views than a judge would be untenable in a pluralist culture such as the United States); *Aref v. Hickman*, Civ. No. 06-23, 2011 WL 13273057, at *3 (C.D. Cal. July 28, 2011) (holding that conclusory allegations of religious bias were insufficient to warrant recusal).

Second, Defendant argues that my bias is evident from my rulings against him. (ECF No. 270 ¶¶ 9, 16, 26–27, 36, 44–51.) These assertions are likewise insufficient for recusal. It is well-established that a movant's disagreements with judicial decisions are not a sufficient basis to warrant recusal under section 144. *See Smith*, 585 F.2d at 87.

Finally, Defendant argues that recusal is warranted because of personal insults he has directed at me. (ECF No. 270 ¶ 14.) Nothing in Defendant's affidavit or the record, however, demonstrates any ill will or bias on my part. If recusal were required every time a litigant directed insulting or derogatory remarks to the presiding judge, few judges would remain available to adjudicate cases. Accordingly, Defendant's remarks, without more, are insufficient to establish grounds for recusal.[2] *See United States v. Eisenberg*, 734 F. Supp. 1137, 1167 (D.N.J. 1990). Defendant's Motion for recusal will therefore be **DENIED**.

B.    **MOTION FOR RECONSIDERATION**

In Defendant's motion for reconsideration, he challenges the Court's ruling: (1) that Defendant forfeited his right to counsel; and (2) cancelling as moot the conflict-of-interest hearing. (ECF No. 264.) Defendant filed a supplement to his motion for reconsideration, which largely consists of inflammatory remarks toward the Court. (ECF No. 273.)

1.    <u>Defendant's Forfeiture of Sixth Amendment Right to Counsel</u>

In Defendant's motion for reconsideration, he argues that he did not waive his right to counsel and did not have an opportunity to have his interests represented prior to the Court determining that Defendant forfeited the right to counsel. (ECF No. 264 at 2.) Defendant

---

[2] To the extent Defendant argues for recusal under 28 U.S.C. § 455(a), his argument likewise fails. Under section 455(a), a judge must recuse if a "reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Intern. Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004). Here, no reasonable person would believe that my impartiality in this case would be questioned because of my religious beliefs. Nor is the fact that Defendant made unflattering comments about me sufficient to form the basis of my recusal. *See Aruanno v. Main*, Civ. No. 07-3867, 2009 WL 3230391, at *2 (D.N.J. Sept. 29, 2009). Indeed, there is simply nothing in or outside of the record that supports an inference of my supposed bias against him.

principally relies on *United States v. Goldberg*, in which the Third Circuit held that forfeiture of the Sixth Amendment right to counsel occurs when a defendant engages in "extremely dilatory conduct." 67 F.3d 1092, 1101 (3d Cir. 1995). There, the Third Circuit found that the defendant had not forfeited his right to counsel where he had only made one death threat and was not provided with an opportunity to represent his interests before the district court. *See id.*

This case is readily distinguishable from *Goldberg*. Here, Defendant has made not just a *single* threat to *one* lawyer. He has instead repeatedly threatened two lawyers *and* their families *and* law firm support staff. (ECF Nos. 158, 163, 258.) Defendant has threatened these lawyers, their families, and law firm support staff nearly 100 times. To illustrate just *some* of the voicemails Defendant left his attorneys:

- I will make your life a living fu**ing hell you piece of s**t. You are fu**ing fired. You are off my case. I will fu**ng destroy you. I will destroy your career. F**k you, you piece of s**t. Suck my d**k. F** you. (ECF No. 258 at 3.)
- I will destroy your f**king life. I will destroy you. I will find you wherever the f**k you go. There is no way you could f**king hide from me you piece of sh**. (*Id.* at 4.)
- I will find you and I will piss in your f**king Corn flakes. You piece of s**t. F**k you, f**kk you, f**k you. (*Id.* at 6.)
- The penalty for treason under federal law is death and you should all be prosecuted for treason and a court should sentence all of you to death. That's what the court should do. (*Id.* at 7.)

Defendant has now been appointed seven lawyers[3], had to be physically removed from the presence of one of them on the first day of trial[4], and has repeatedly demanded that he be appointed

---

[3] ECF Nos. 6, 15, 129, 166, 178, 237, 241.
[4] ECF No. 91 at 45:20-22.

new attorneys after a "breakdown" in communications.[5] In addition, Defendant threatened another district judge to such an extent that the judge had to recuse. (ECF No. 165.) Since then, Defendant's abusive and threatening conduct has been pervasive and relentless. (*See, e.g.*, ECF No. 213 at 7.) In numerous filings with the Court, Defendant has also made vague threats toward the undersigned[6], leading to the conclusion that Defendant's abusive and dilatory conduct will persist with any newly appointed counsel. Taken together, it is clear that this case is far more serious than the facts in *Goldberg* and that Defendant has engaged in extraordinary conduct that warrants forfeiture of the right to counsel.

Nor does it matter, as Defendant suggests, that the Court never warned him that he could forfeit his right to counsel. (ECF No. 273 at 4–5.) Rather, the Third Circuit has unmistakenly held that forfeiture "does not require the knowing and intentional relinquishment of a known right." *United States v. Legget*, 162 F.3d 237, 250 (3d Cir. 1998) ("[F]orfeitrue results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right."). Indeed, when a defendant engages in extremely dilatory conduct, such as the case here, the fact that a district court did not adequately warn a defendant of forfeiture is of no consequence. *See United States v. Harley*, 39 F. App'x. 789, 790 (3d Cir. 2002); *see also United States v. Barkers-Woode*, 136 F.4th 496, 505 (3d Cir. 2025) ("Although the District Court's warnings did not 'advise [the defendant] in unequivocal terms both of the technical problems he may encounter in acting as his own attorney and of the risks he takes if his defense

---

[5] ECF Nos. 119, 127, 135, 161, 174, 216, 238, and 261.
[6] In a recent filing, Defendant wrote that he was going "to put [the undersigned] in [his] place," that Americans "have the obligation to destroy [the undersigned]," that I "should face the most serious penalty," that I am "play[ing] with fire," and that I am "going to learn the hard way," which "won't be something [I] will enjoy." (*See generally* ECF No. 273.)

efforts are unsuccessful,' they did not have to given [the defendant's] forfeiture of his right to counsel.")

Nevertheless, after reviewing Defendant's initial motion for reconsideration, the Court provided Defendant with an opportunity to explain why he believed he was entitled to continued representation. (ECF No. 267.) Rather than make any meaningful attempt to do so, Defendant submitted a supplemental motion that is comprised almost entirely of personal insults directed to the undersigned. (*See generally*, ECF No. 273.) Far from rebutting his former counsel's detailed and credible allegations of threatening conduct, Defendant's supplemental filing only underscores the very dilatory and abusive conduct that warranted forfeiture in the first place.[7] This Court sees no reason to continue subjecting counsel to Defendant's abusive and threatening conduct.

### 2. Conflict-of-Interest Hearing

Defendant next argues that the Court must hold a hearing to determine whether Mr. Minde, Defendant's appellate counsel, has a conflict-of-interest. (ECF No. 268 at 4.) Under the Sixth Amendment, a defendant has "the right to the attorney's undivided loyalty free of conflict of interest." *United States v. Moscony*, 927 F.2d 742, 748 (3d Cir. 1991). "The Third Circuit has recognized that an attorney's loyalty and independent judgment are 'essential elements' of the attorney-client relationship, and that any personal interests of counsel that are 'inconsistent, diverse, or otherwise discordant' with those of the client should not be permitted to have an adverse effect on the attorney's professional judgment." *United States v. Lacerda*, 929 F. Supp. 2d 349, 356 (D.N.J. 2013). Likewise, the New Jersey Rules of Professional Conduct ("N.J. R.P.C.") regulate the conduct of attorneys in such instances, and provide that:

---

[7] The Court takes no position on whether Defendant may be appointed appellate counsel by the Third Circuit. To the extent the Court's previous order stated otherwise, that order is modified so that Defendant may seek the appointment of appellate counsel by the Third Circuit.

10

> A concurrent conflict of interest exists if:
>
> (1)     the representation of one client will be directly adverse to another client; or
> (2)     there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

N.J. R.P.C. 1.7.

As previously explained, Defendant appealed his sentence but later asserted that his appellate counsel, Mr. Minde, had a conflict of interest. (ECF No. 230.) The apparent conflict stems from a previous association of former New Jersey Governor Chris Christie—whom Defendant claims to be a victim in this matter—with Mr. Minde's law firm, Dughi, Hewit & Domalewski ("DHD"). (ECF No. 235-1.) According to Defendant, this purported association caused Mr. Minde to "deliberately botch" Defendant's appeal. (*Id.*) In response, the Government argues that Governor Christie was never alleged to be a victim in this case, and that even if he was, no conflict would exist. (ECF No. 235-2.) The Third Circuit remanded the matter back to this Court "for the limited purpose of conducting a hearing and fact-finding as to whether Mr. Minde has a conflict of interest." (ECF No. 235.)

Here, however, the Court finds that no hearing is required because, for the purpose of Mr. Minde's alleged conflict, the Court accepts as true each of Defendant's assertions. According to Defendant, the Government alleges that Defendant called the Lieutenant Governor of New Jersey and falsely told him that a bomb had been placed in the Governor Christie's office. (ECF No. 235-3.) The indictment reflects this at Count 29, which alleges a violation 18 U.S.C. § 844(e). That statute provides that whoever "willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual . . . ." 18 U.S.C. § 844(e). As stated by

Defendant, the alleged threat was made to the Lieutenant Governor and there are no allegations that Defendant ever contacted Governor Christie or that Governor Christie was aware of the alleged threat. (ECF No. 253-3.) Thus, Governor Christie was not an alleged victim as Defendant contends.

Even assuming Governor Christie could be characterized as a victim, there is no basis for the Court to conclude that Mr. Minde's personal interests would interfere with his ability to represent Defendant on appeal. Governor Christie left DHD nearly 13 years before Mr. Minde joined the firm and there is no indication that Mr. Minde worked with, or even overlapped with, Governor Christie while at DHD. In fact, it is a matter of public record that Governor Christie was serving as the Governor of New Jersey when Mr. Minde began at DHD. Nor does Mr. Minde's prior service as an Assistant Counsel in the Governor's Office create a conflict. Mr. Minde only held that position from 2010 to 2013, nearly three years before any conduct alleged in the indictment occurred. In short, no conflict arises merely because Mr. Minde is employed by a law firm with which Governor Christie was once affiliated, or because he previously held a government role unrelated in time or substance to the charged conduct.

Nevertheless, because Defendant has forfeited his right to counsel, Mr. Minde is relieved of any further representation of Defendant in this matter before this Court. The Court will defer to the Third Circuit as to whether Mr. Minde should continue representing Defendant on appeal or whether new appellate counsel should be appointed. Accordingly, Defendant's motion for reconsideration will be **DENIED**.

### C.    MOTION TO DISQUALIFY ALINA HABBA

Defendant next moves to disqualify Alina Habba as the Acting United States Attorney. Given, however, that Ms. Habba is no longer the Acting U.S. Attorney in New Jersey, Defendant's motion will be **DENIED AS MOOT**.

### IV.    <u>CONCLUSION</u>

For the reasons stated above, the Court will **DENY** Defendant's Motions. An appropriate Order will follow.


Date: December 16, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
